## N. Y. SUPERIOR COURT.

BENJAMIN WOOD agt. THE MAYOR, CORPORATION, &c.

The amended charter of 1857, of the city of New York, provides that, to make the proceedings of the common council legal and binding, they must be advertised for a certain specified time in the corporation newspapers.

Where a newspaper was designated as one of such papers, with instructions that it should publish the proceedings of the different boards, and services thereunder were performed before the law of May 4, 1866, called the tax levy law, was passed, and the plaintiff's rights had accrued and were vested:

*Held*, that the 10th section of the act of May 4, 1866, could not act retrospectively so as to affect the plaintiff's right to recover for such services.

*Heard at Special Term, June,* 1866.

ROGER A. PRYOR, *Esq., for plaintiff.*

RICHARD O'GORMAN, *corporation counsel, for defendants.*

After the arguments of counsel, Mr. Justice McCUNN said:

This is an action to recover $30,000 and upwards, for advertising done by plaintiff for defendants. The complaint is in the usual form for services rendered. The answer admits that there is justly due and owing the plaintiff the sum of $23,819.25, being a part of plaintiff's account, and sets up a general denial to the balance.

Application is now made, under section 244 of the Code, for an order directing the comptroller to pay over the amount admitted to be due by the answer. The corporation counsel, in his points, urges that, notwithstanding the admission contained in the answer, "that there is justly due and owing to the plaintiff the sum of $23,815.25," yet, under section 10 of what is commonly called the city tax law, or tax levy, passed May 4, 1866, wherein it says "no judgments in actions upon contract shall be entered, by default or otherwise, against the corporation, except upon proofs in open court that the amount sought to be recovered still remains unexpended in the treasury to the credit of the appropriation to the specific object or purpose upon the claim sued for as

aforesaid," judgment cannot be rendered by this court against
the corporation. He also says that section 28 of the·charter
of 1857 forbids the common counsel incurring expenditures,
unless for previous appropriations. The plaintiff's counsel
replies that his client's engagement with the corporation for
such advertising was made and the work ·performed in the
years 1864, 1865 and 1866, and before the tax levy was
passed or became a law; therefore it (the law of May, 1866)
could not act retrospectively as to contracts existing before
the law was passed, it being repugnant to section 10, article
1, of the constitution of the United States. · And in answer
to the next objection, he replies that section 28 of the
charter does not and was· not intended to . apply to such
cases as plaintiff's. I have thus given a brief synopsis of the
case.

Now how stands the law? Section 7 of the charter declares
that "all resolutions and reports of committees, which shall
recommend any specific improvements involving the appro-
priation of public moneys, or the taxing or assessing the citi-
zens of the city, shall be published in all the newspapers
employed by the corporation, and shall not be passed or
adopted until after such notice has been published at least
two days." Section 37 also declares that "it shall be the
duty of the clerks of the respective boards to publish all ordi-
nances which shall be passed, and also all other proceedings,
in said newspapers, upon the passage of an ordinance which
shall contemplate any specific improvement, or involve the
sole disposition or appropriation of public property, or the
expenditure of public moneys or income therefrom, or lay
any tax or assessment, such ordinance shall, before the same
shall be sent to the other board, be published with the ayes
and noes, and with the names of those voting, in said news-
papers, and that such publication shall be a part of the pro-
ceedings." Section 38 declares that "all contracts shall be
entered into by the appropriate heads of departments, and
shall be founded on sealed bids or proposals made in compli-

ance with public notice, advertised in such of the newspapers of the city as may be employed by the corporation for the purpose, said notice to be published for at least ten days in each of the daily newspapers so employed." . Section 41 declares that "persons acquiring any ferry lease, or other franchise, or grant, under the provisions of this act, shall be required to purchase, at a fair appraised valuation, the boats, buildings and other property of the former lessees or grantees, actually necessary for the purposes of such ferry grant or franchise. Previous notice of all sales referred to in this section shall be given under the direction of the comptroller in the newspapers employed by the corporation, and for thirty days in each of the daily newspapers so employed." So that it will be seen at once that the charter makes such publication a part of the proceedings of the different boards; and surely the learned corporation counsel will not contend that, because a clause in section 28 declares "that no expenses shall be incurred by any of the departments or officers thereof, whether the object of expenditure shall have been ordered by the common counsel or not, unless an appropriation shall have been made covering such expense," that the corporation newspapers who publish these proceedings, thereby making them valid, cannot obtain a reasonable compensation for their services? For, mark, the common council does not direct the proceedings to be published. The four sections of the charter I have just cited absolutely orders them to be published in the "corporation newspapers," and it therefore follows that it is the charter that incurs the expense, and not the boards of common council. Moreover, it delares that, if the proceedings are not published, the whole shall be void. Indeed, if the construction claimed by the defense for section 28 be the correct one, why the whole proceedings of our city government would come to a stand still, and all the sales for taxes and assessments that have taken place in this city for years past would be void. It is clear, therefore, that section 28 was intended by the legisla-

ture to prevent extravagant and useless expenditures by the boards, and was not intended to apply to matters of this kind; and as an evidence of the fact that it was not so intended, the learned corporation counsel has cited no authorities showing that my views in the construction of this section are incorrect. On the contrary, I find him consenting, or offering judgment against the corporation for certain amounts incurred for advertising, and the courts uniformly enter up judgments on such consents. On this question I, therefore, hold that, as the charter declares the corporation shall designate newspapers to publish their proceedings, and as said charter also provides that such proceedings, to make them legal and valid, must be published in such newspapers; and it being admitted that the *Daily News* was a corporation paper, it follows, therefore; as a matter of law, that Mr. Wood is entitled to recover a reasonable compensation for such services. Sections 7, 37, 38 and 41 · declare that such proceedings, to make them valid, must be published for a certain length of time. Now, the common council does not make the expenditure, but the charter directs it to be made. I think, therefore, on the first point there is hardly a reasonable doubt left against the plaintiff's right to recover.

In regard to the second point, I fully agree with the views entertained by the learned gentleman who represents the plaintiff in the action, in saying that the relief claimed should be granted. Section 10 of said tax law cannot affect the merits of this case, because the engagement was made and the work done before the law of 1866 took effect. The instant the contract with the plaintiff was completed and the work performed, the constitution of the land places the rights under that contract forever beyond legislative control, and it was for that very purpose that the sagacious men who framed the federal constitution introduced the 10th section of article 1 in that instrument. To say that Mr. Wood has performed his work, has fulfilled his obligations in all respects,

Wood agt. The Mayor, &c.

and is entitled in all justice and in equity to his payment, yet the law of the 4th May, 1866, has taken away his remedy by judgment, would be most preposterous. Any statute that takes away or impairs vested rights acquired under existing law, or creates a new obligation, or imposes new restrictions in respect to past transactions, must be deemed retrospective. Such was the rule laid down by Mr. Justice STORY, in *Society* agt. *Wheeler* (2 *Gallison*, 104). In the case cited, that eminent jurist says: "It is very obvious that the rights of a party under a contract may be destroyed by denying a remedy, or may be seriously impaired by burdening the proceedings with new conditions, so as to make the remedy worthless, and I am quite sure no one will insist for a moment that there is any material difference between a retrospective law declaring a particular obligation void, and one that takes away the remedy to enforce it. Indeed, it is the remedy that protects the rights and enforces the obligations of all contracts, and it was for the protection of that remedy that the clause in the constitution, now under consideration, was mainly intended." In the case of *McCracken* agt. *Hayward* (1 *How. U. S. R.* 608), Mr. Justice BALDWIN, in delivering the unanimous opinion of the court, said : "The obligations of a contract consist in its binding force on the party who makes it, and this depends on the laws in existence when it is made; they are necessarily referred to in all contracts, and forming a part of them, as a measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning when it became consummated. The law defines the duty and the right, and compels the one party to perform the thing contracted for, and gives the other the right to enforce the performance by the remedies in existence. If any subsequent law affect to diminish the duty, to impair the right, it necessarily bears on the obligation of the contract in favor of

one party, to the injury of the other. Hence, any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the provision of the constitution." Now this very doctrine completely covers the case at bar. Again, Chancellor KENT (1 *Kent's Comm.* 467, *note*), in discussing this question, lays down as a rule, that "to take away by legislative acts the existing remedies for enforcing obligations of the contract, so as to leave the creditor without redress, would be a mockery of justice, and repugnant to the constitution."

It is, therefore, clear that all suspension by statute of remedies, or any part thereof, existing when the contract was made, is more or less impairing its obligation; and this clear rule of law was held in the case of *Green* agt. *Biddle* (8 *Wheat. R. p.* 1). In that case, Chief Justice TANEY, in delivering the opinion of the court, says that to deny any remedy under a contract, or by burdening the remedy with new conditions and restrictions, and so make it useless, or hardly worth pursuing, is equally a violation of the 10th section of article 1 of the constitution. And *Blackstone*, in his *Commentaries* (*vol.* 1, *p.* 52), says that the remedial part of a law is a necessary consequence of the declaratory; for, says the learned commentator, "laws must be very vague and imperfect without a remedy."

But, apart from all other considerations, and looking at the language of the act, there is nothing therein that makes it applicable to the case under consideration, and we ought with the highest respect conclude that our law makers did not intend it should have a retrospective or injurious effect; because, if the construction contended for be correct, then the legislature might just as well have said that claims similar to the plaintiff's might all be blotted out. This was held to be the true doctrine, in the case of *Danks* agt. *Quaeken-boss* (1 *N. Y. R.* 130; *also* 1 *Den. R.* 127), and in the case of *The People* agt. *The Supervisors of Westchester County* (4

*Barb.* 70). In the last case, Mr. Justice BARCULO, in one of the ablest opinions in the books, makes this doctrine clear as day. Indeed, authorities sustaining my views are very numerous. I have simply cited a few of the leading cases. Moreover, if the principle contended for by defendant's counsel, in this respect, has a single precedent to warrant it, I must say I have not been able to find it. It is quite true that Mr. Justice GARDINER, an able and a very learned man, in the case of *Danks* agt. *Quackenboss*, in a long dissenting opinion, endeavors to show that the current of authorities in our books is wrong on this subject; but it is quite clear to the mind of the common reader that in his efforts to do so he labors hard and to very little effect. Moreover, the cases cited in his opinion do not touch the question under discussion.

How stands the present case? First, we have the amended charter of 1857, declaring that, to make the proceedings of the common council legal and binding, they must be advertised for a certain specified time in the corporation newspapers. Second, we have the *Daily News* designated as one of such papers, with instructions that it should publish the proceedings of the different boards. Then we have the services performed in 1865 and 1866, and this action brought for the recovery of such services before the law of May 4, 1866, was passed. Now, mark you, all this is admitted in the answer of the defendants; therefore, it is clear, from my reasoning, that section 10 of the tax law, passed May 4, 1866, and passed after the plaintiff's rights had accrued and were vested, cannot act retrospectively so as to affect the plaintiff's rights to recover in this case.

Let an order be entered compelling the comptroller to pay the amount admitted to be due, and a reference be ordered to Enoch L. Lowe, Esq., counsellor at law, No. 56 Wall street, New York city, to ascertain the justice of the balance of the claim.